UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Marquis Oldman

Write the full name of each plaintiff.

-against-

Warden M. Hallett
Deputy Warden of Security
Officer Jane Doe
All Acting as Agents of NYS + NYCDOC

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

18CV8575

No. _____
(To be filled out by Clerk's Office)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☒ Violation of my federal constitutional rights

☒ Other: State constitutional Right granted under NY law + Doc direction 4%

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

Marquis   O.K.   Oldham
First Name    Middle Initial    Last Name

Marquis    Oldman
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

NY NYSID # 12217526K
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Rikers Island GRVC 11B secure unit
Current Place of Detention

09-09 Hazen Street
Institutional Address

East Elmhurst    N.y    11370
County, City    State    Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☒ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

Page 2

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1: Michelle   Hallett   Warden
First Name   Last Name   Shield #

GRVC Warden
Current Job Title (or other identifying information)

09-09 Hazen Street
Current Work Address

East Elmhurst   New York   11370
County, City   State   Zip Code

Defendant 2: John/Jane   Doe   [8/1/18 to 9/1/18]
First Name   Last Name   Shield #

Deputy Warden of Security GRVC
Current Job Title (or other identifying information)

09-09 Hazen Street
Current Work Address

East Elmhurst   New York   11370
County, City   State   Zip Code

Defendant 3: Unknown   Hasangjekaj   2071
First Name   Last Name   Shield #

Correction officer
Current Job Title (or other identifying information)

09-09 Hazen Street
Current Work Address

East Elmhurst   New York   11370
County, City   State   Zip Code

Defendant 4:
First Name   Last Name   Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City   State   Zip Code

Page 3

## V. STATEMENT OF CLAIM

Place(s) of occurrence: __VISITING Search__

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

ON the date of question I was called for a visit. I was escorted Normally to my visit. My visit went as Normal and was uneventful. At the conclusion of my visit 45 mins later, I was suddenly surrounded by 3 officers + Captain Vallett. I was then taken to the visit search Room for No Apparent Reason. I asked why am I in visit search No one answered me. The officer then left the und CIB Entered. I was thrown against the wall and questioned by the new CIB officers who were now holding me against the wall. I was asked Repeatedly if I had any weapons. I Replied No. From the look on the CIB members faces I could tell they thought I was lying. They then sarcastically continued to question me, out of nowhere officer Jane Doe, who Refused to identify herself was walking towards me. I asked who is she and why is she here when there is 5 guys in here. No answer. In a taunting manner Jane Doe began to place a Baseball Glove on her hand and digged in my Pants I felt ~~extremely~~ humiliated and extremely embarrassed ~~violated~~ as the male officers placed me in a

bent position. Officer Jane Doe and the Rest of the CIB team did not follow proper search procedures and illegally performed an illegal search on my person + Body. this search was in total violation of all state and federal laws and procedures outlined in DOC Rules + Regs. while being groped by Jane Doe She used excessive + unreasonable force and injured me in the process. I sustained injuries to my Scrotum, inner thighs and penis. (See Exhibit 1)

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

Soft tissue damage to testicals, Scratches and aBrasions to scroutum area and inner thigh Regions, anal soreness and inflamation due to non consentual tochin by female officer while being held down By male officers while I was already in handcuffs which goes against department porcedures

**VI. RELIEF**

State briefly what money damages or other relief you want the court to order.

I am seeking Nominal and Punitive damages. The Nominal damages Redress the humiliation and superficial flesh wounds suffered during the encounter. I Am looking for 1 dollar in nominal damages for the "evil motive and/or intent" demonstrated By the defendent via their "Reckless or/and callous indifference" to my human, constitutional and State Sanctioned Rights. More over I Am seeking Punitive damages in the amount of 310,000.00 three hundred thousand ten dollars and zero cents Because of the actions of defendants were intended to send a Stern message to all inmates that harsh + immediate Punishment will Be inflicted upon you Regardless of Rules or Precedures outlined in DOC Directive 4910 or State laws and irregardless to your Constitional Rights. [See Smith v Wade 461 US 30; Reilly v Grayson, 310 f.3d 519, and Blissete v Coughlin, 66 F.3d 531, 53t-36)

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated: September 6th 2018

Plaintiff's Signature: X *[signature]*

First Name: Marquis
Middle Initial: O.K.
Last Name: Oldman

Prison Address: GRVC - Rikers Island 11B/Secured 09-09 Hazen Street

County, City: East Elmhurst
State: NY
Zip Code: 11370

Date on which I am delivering this complaint to prison authorities for mailing: Sept 6th 2018

Page 6

G. **Guidelines for Strip Searches/Strip Frisks**

1. Staff Demeanor

    a. Only a Correction Officer who is conducting the frisk and a supervisor of the rank of Sergeant or above may be present and able to see the inmate during a strip search or strip frisk unless:

       (1) An inmate has a record of resistance to strip searches, strip frisks, or a record of assaults or attempted assaults on Correction Officers, or the inmate indicates he or she will actively resist the search;

       (2) A major disturbance of the facility requires that inmates be held and searched in groups; or

       (3) The inmate is a possible victim of sexual abuse and is being strip frisked* prior to transportation to an outside hospital (in this particular case a health services provider shall be present, if available).

       *Note: Directive #4027B, "Sexual Abuse Reporting & Investigation - Inmate-on-Inmate," provides additional guidance for strip frisks of sexual abuse victims.

    b. Strip searches or strip frisks shall be conducted by an Officer or employee of the same sex as the inmate being searched.

    c. In performing a strip search or strip frisk, Officers shall conduct themselves professionally. Officers shall be alert to the sensitive nature of the strip search or strip frisk and conduct such searches in a manner least degrading to all involved.

2. Location/Privacy

    a. Every precaution shall be taken to conduct strip searches and strip frisks in an area or location which provides privacy.

       In locations normally used for conducting strip searches or strip frisks, access and traffic by inmates other than those being strip searched or strip frisked shall be limited to the extent possible.

       When it is necessary to conduct a strip search or strip frisk outside the facility, the search or frisk shall be conducted in private.

    b. Strip searches or strip frisks shall be conducted in locations heated to a level of human comfort for disrobed persons.

    c. In locations normally used for strip searches or strip frisks, the floor shall have a covering sufficient to protect bare feet from the chill of the floor.

    d. In locations normally used for strip searches or strip frisks, provision shall be made for the placement of the inmate's clothing off the floor. If conducted elsewhere, provision shall be made for placement of the inmate's clothing off the floor.

    e. Locations normally used for strip searches or strip frisks shall be kept clean and free from dust and accumulations of dirt and grime. Such areas shall be cleaned at least once daily, either before commencing the day's strip searches or strip frisks, or at the conclusion of the day.

3. Inmate-Staff Contact
   a. When inmates cooperate in the conduct of the strip search or strip frisk, the inmate's body shall not be touched except to run fingers through the inmate's hair if necessary.
   b. When conducting a strip frisk, visual inspection of the anal cavity shall be accomplished by having the inmate bend over and spread the buttocks. For purposes of visual inspection of the vagina, female inmates shall squat and spread their legs.
4. Use of Force in the Conduct of a Strip Search or a Strip Frisk
   a. When a strip search has been authorized by a supervisor of the rank of Sergeant or higher and the inmate refuses to submit to the search, a supervisor will be notified and the inmate's refusal will be considered to constitute probable cause to conduct a strip frisk.
   b. If force is used to complete the strip frisk, the force used shall be in accordance with Directive #4944, "Use of Physical Force."
   c. The inmate's clothing will be removed with the exception of undershorts for males, bra and panties for females and those inmates in a male correctional facility who have been issued a permit to possess and wear a bra. The inmate's mouth shall be forced open by an employee wearing disposable single-use plastic or rubber gloves for each inmate. Once the mouth inspection is complete, the undergarments will be removed and the remainder of the strip frisk completed.
   d. The employee who spreads the inmate's buttocks for a visual examination of his or her anal cavity shall wear disposable single-use plastic or rubber gloves for each inmate.
   e. Where force is used to perform a strip frisk, the incident shall be reported as set forth in Directive #4004, "Unusual Incident Report."
5. Documentation
   a. Form #2063, "Certificate of Search," is to be completed for all inmates who, when leaving the facility, receive a strip frisk or strip search.
   b. Form #1140 is to be completed for all inmates who receive a strip frisk or strip search after a finding of probable cause.
   c. A facility Captain or highest ranking security supervisor shall be responsible for completing a monthly report of monitoring activities and submitting it to the Deputy Superintendent for Security (or Superintendent in those facilities without a DSS) for review, approval, and filing. These reports will be made available for review by visiting Central Office staff and submitted to Central Office upon request of the Director of CERT Operations.

H. Body Cavity Search: (See Division of Health Services Policy 1.37, "Body Cavity Search.")
   1. Definition: A body cavity search means a physical examination of an inmate's oral and/or genital cavities by a primary care provider (PCP) (e.g., physician, nurse practitioner, physician assistant, dentist).

2. Authorization
    a. Single inmate: The Superintendent, Acting Superintendent, or facility Officer of the Day shall not authorize a body cavity search without having first been advised of all circumstances and will base the decision upon evaluation of those circumstances, with particular consideration of the intrusiveness of a body cavity search and only after obtaining approval from the Deputy Commissioner for Correctional Facilities and the Deputy Commissioner/Chief Medical Officer or designee.
    b. More than one inmate: In instances when a body cavity search is requested or suggested for more than one inmate in a single incident, the Superintendent, Acting Superintendent, or the facility Officer of the Day must gain authorization from the Deputy Commissioner for Correctional Facilities and Deputy Commissioner/Chief Medical Officer or, during non-business hours, the Departmental Officer of the Day.
    c. The Deputy Commissioner for Correctional Facilities and Deputy Commissioner/Chief Medical Officer, or the Departmental Officer of the Day shall not authorize a body cavity search without having first been advised of all circumstances and will base the decision on evaluation of those circumstances, with particular consideration of:
        (1) The intrusiveness of a body cavity search;
        (2) The number of inmates to be searched;
        (3) The imminence and seriousness of the danger of the contraband;
        (4) The likelihood that the contraband was secreted in the body cavities and has not been disposed of; and
        (5) The possible use of less intrusive searches, to either discover the contraband or a narrowing of the group to be searched.
3. Application: A body cavity search may be authorized only in circumstances where there are compelling reasons to believe that the inmate or inmates to be searched have secreted contraband in an oral and/or genital cavity (rectal cavity searches will not be authorized), the nature of which constitutes a clear threat to the safety and security of the facility and/or a threat to the safety and well-being of any person. Compelling reasons are limited to:
    a. A foreign object's presence is indicated by a metal detector but is not visible during a strip frisk;
    b. A foreign object is observed to be present during a strip frisk;
    c. Intelligence information possessed by facility administration and/or staff indicates the probability of the presence of contraband in the oral or genital cavities of the inmate or inmates to be searched; or
    d. Probable presence of contraband in the body cavities of the inmate or inmates to be searched is indicated by other observations such as unusual gait, indications of discomfort, particularly while walking or sitting, unusual posture, etc.

4. Procedure
   a. This search shall be conducted in accordance with professional standards and in compliance with the Health Services protocol regarding body cavity searches which provides, in pertinent part: This procedure shall be conducted by a PCP after approval by the Deputy Commissioner/Chief Medical Officer or designee. The examination must be accomplished in an appropriate examining room using acceptable aseptic techniques for such an exam (e.g., draping, positioning, explanation of the procedure to be performed). One Correction Officer of the same sex as the inmate must be present as a witness.
   b. Prior to conducting a body cavity search, the PCP must explain the process to the inmate and the inmate must be given the opportunity to yield the contraband voluntarily. If the search is for a specific item which is voluntarily yielded, the search shall not continue. Force should not be used to complete a body cavity search.
   c. Every precaution shall be taken to ensure as much privacy as is possible under the circumstances.
   d. On all occasions that a body cavity search is conducted, the incident must be reported, through the unusual incident process under incident type #22, by specifying body cavity search, to the Department's Communication Control Center with the follow-up submission of the required Unusual Incident Report (see Directive #4004, "Unusual Incident Report").

I. Radiological Detection Search
   1. Definition: A radiological detection search means an internal search of the inmate's person via the use of equipment such as X-rays.
   2. Authorization: A radiological detection search will be performed only with the express authorization of the Superintendent, Acting Superintendent, or facility Officer of the Day, and only after consultation with the facility's Health Services Director or designee to ensure that such a search will not be injurious to the inmate's health.

      The Superintendent, Acting Superintendent, or facility Officer of the Day shall not authorize a radiological detection search without having first been advised of all circumstances and will base the decision upon evaluation of those circumstances, with particular consideration given to the sensitivity of a radiological detection search.
   3. Application: A radiological detection search may be authorized only in circumstances where there are compelling reasons to believe that the inmate or inmates to be searched have secreted in their bodies contraband, the nature of which constitutes a clear threat to the safety and security of the facility and/or a threat to the safety and well-being of any person.

J. Native American Medicine Bag Search

1. A Native American shall hold his or her medicine bag open for visual inspection by the Correction Officer. If the inmate is not present or if special security concerns exist (e.g., the Native American inmate refuses to open the medicine bag or threatens, assaults, or attempts to assault staff or other inmates, or the inmate or the medicine bag pose a threat to the safety and security of the facility), then the medicine bag may be held open by the Chaplain. If the Chaplain is not available, the bag shall be secured by the Correction Officer in an area designated by the Deputy Superintendent for Security until the Chaplain is present. If exigent circumstances exist, however, the Superintendent may authorize the search of a bag without a Chaplain, provided a Lieutenant or higher ranking Officer is present when the bag is opened for visual inspection.

2. A medicine bag may be scanned at any time with a metal or other electronic detector.

3. The contents of a medicine bag may be tested for illegal substances if contraband is suspected, pursuant to the provisions of Directive #4938, "Contraband Drug Testing."

## IV. SITUATION SEARCHES

A. Transfer: When an inmate is transferred from one DOCCS facility to another, he or she will be strip frisked and subjected to a metal detector search at the facility from which he or she is being transferred. The Officer conducting the search shall file Form #2063. In the absence of probable cause, the inmate will not be strip searched or strip frisked at the receiving facility. A metal detector search will be conducted by the receiving facility. If it becomes necessary to conduct a clothing exchange, the inmate will not be required to remove his or her underwear (undershorts-males/bra and panties-females/gender appropriate undergarments).

B. Contact Visits: All inmates in medium and maximum facilities shall be strip frisked and subjected to a metal detector search after a contact visit. They may not be strip frisked after non-contact visits. (See also sub-section I below.)

C. Attorney Visits: Inmates have the option of having non-contact visits with Attorneys. In the absence of probable cause, no strip searches or strip frisks may be conducted after non-contact Attorney visits.

D. Special Housing Units (Disciplinary and/or Protective Custody) Frisks

1. An inmate is to be strip frisked and subjected to a metal detector search on reception in the Special Housing Unit, disciplinary and/or protective custody, and in accordance with sub-section I (below) after visits. Form #1140SHU, "Report of Strip Frisk on Admission to SHU or MHU Cell/Room," must be completed.

2. An inmate will be pat frisked and hand scanned with a metal detector before leaving the Special Housing Unit or upon returning to the Special Housing Unit from any activity within the facility.

From: M. Oldman (441-18-03373M)
GRVC - Rikers Island
09-09 Hazen Street
East Elmhurst, NY 11370



To: United States District Court
Southern District of New York
ATTN: Clerk of Court - Pro Se
Daniel Patrick Moynihan US Courthouse
500 Pearl Street
New York, New York
10007

2018 SEP 19 PM 3:47
RECEIVED
SDNY DOCKET UNIT

Legal mail